UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**
DEC 14 2017
Clerk, U.S. District and
Bankruptcy Courts

)
IN RE APPLICATION OF THE )
UNITED STATES OF AMERICA FOR ) Misc. No. 17-mc-2682
AN ORDER PURSUANT TO )
18 U.S.C. § 2703(d) ) Filed Under Seal
)

## OBJECTION TO THE MAGISTRATE JUDGE'S DENIAL OF AMENDED APPLICATION OF THE UNITED STATES FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, through undersigned counsel, respectfully submits under seal its objection to the Magistrate Judge's order, received November 30, 2017, denying the United States's *ex parte* application for an order, pursuant to 18 U.S.C. §§ 2703(d) and other authority. The proposed order would require Royal Caribbean Cruises, Ltd. ("RCCL"), which for purposes of this request is a "provider of electronic communication service" ("ECS") or a provider of "remote computing service" ("RCS") within the meaning of Section 2703(c) of the Stored Communications Act ("SCA"), to disclose subscriber and transactional records pertaining to a specified internet protocol ("IP") address.[1]

This matter raises the question of whether, where a company serves as the internet services provider ("ISP") to a subscriber/customer for a fee, and the government seeks records related to that service, the company is an ECS or RCS covered under the SCA, regardless of whether serving as an ISP is its primary business. Here, the United States contends that RCCL is so covered. Were

---

[1] The government is troubled that the Magistrate Judge's under seal order was obtained in complete and unredacted form by news media. To the government's knowledge, the only persons outside the Court with access to the order were U.S. Department of Justice ("DOJ") attorneys including those at the U.S. Attorney's Office for the District of Columbia and in other DOJ components. The order was never served on any third parties as the government's request for such an order was denied. Out of an abundance of caution, this objection does not disclose any further details about the application but instead focuses on the legal issue.

RCCL not covered, the subscriber records could be voluntarily disclosed by RCCL, or obtainable by the government through other process, such as a grand jury subpoena. Notwithstanding the United States's position, the Magistrate Judge held RCCL was not an ECS and/or RCS and, by implication, that those protections and requirements do not apply. The United States pursues this objection to clarify the legal issue and to avoid any suggestion that the government somehow seeks to avoid the SCA's requirements for obtaining electronic communications information from a company serving as an ISP, that is, as an ECS or RCS.

## PROCEDURAL BACKGROUND

On July 25, 2017, the United States filed an application seeking a court order pursuant to the SCA to require RCCL, "an internet service provider based in Miami, Florida, to disclose subscriber and transactional records in relation to a specific IP address[.]" App. at 1. As part of the application, the United States disclosed that RCCL had purchased bandwidth from "HCCL" in bulk for resale to customers/subscribers aboard the vessel. As such, the application stated that RCCL would likely be in possession of the responsive information.[2]

---

[2] According to publicly available information, HCCL, also known as Harris CapRock Communications, was a global provider of fully managed, end-to-end communication solutions specifically for remote and harsh environments including the energy, government, and maritime markets. *See Speedcast Communication LinkedIn page, available at https://www.linkedin.com/company/harris-caprock-communications* (last visited October 16, 2017). Harris CapRock was purchased by Speedcast on January 3, 2017. *See "Speedcast Completes Acquisition of Harris CapRock," available at https://www.speedcast.com/speedcast-completes-acquisition-of-harris-caprock/* (last visited October 16, 2017).

For this Court's reference, the Magistrate Judge inquired why this Section 2703(d) application is not directed to "HCCL," now known as Speedcast. As disclosed in its earlier filing, based on information received from RCCL, the United States believes that HCCL/Speedcast would not have to access to nor control over the records sought and therefore is not the correct recipient of the requested order. Speedcast provides RCCL with bulk internet service and IP addresses, including the target IP address, which RCCL then uses to provide its customers with internet access. By the terms of the service agreement, once Speedcast leases the IP address to RCCL, Speedcast neither maintains records of what devices are accessing the Internet, nor when those devices are accessing the Internet. RCCL maintains this information. In the instant case, RCCL

That is, as disclosed on its own website, for a fee, RCCL provides its passengers with the ability to access the internet, which includes web-based email, while aboard the ship.[3]

On July 31, 2017, the Magistrate Judge stayed the application, seeking additional information from the United States, including the authority that supports the assertion that RCCL is a "provider of electronic communication service" ("ECS") or a provider of "remote computing service" within the meaning of Section 2703(c) under the SCA. On August 22, 2017, the United States filed a Notice of Withdrawal. Thereafter, on October 20, 2017, the United States filed an amended application that addressed the issues raised by the Magistrate Judge and sought an order for the records pursuant to Section 2703(d).

By order dated November 29, and received by the United States on November 30, 2017, the Magistrate Judge denied the requested order.

## LEGAL ARGUMENT

### A. Statutory Framework

The Electronic Communications Privacy Act of 1986 was enacted by Congress in order to update Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Wiretap Act") to apply privacy protections and standards to emerging computer and telecommunications technologies. PL 99–508 (HR 4952), PL 99–508, October 21, 1986, 100 Stat 1848. The Senate

---

assigned the target IP address to one of its cruise ships and used its own network infrastructure to provide its customers with access to the internet while on board the ship. Because RCCL's customers used the IP address from aboard an RCCL ship through an RCCL router and network, the government believes that the records sought would be in the possession of RCCL and not HCCL/Speedcast.

[3] *See* Top FAQs, Royal Caribbean International, available at: *http://www.royalcaribbean.com/beforeyouboard/whatToKnow/topTenFAQs/detail.do?pagename =top_10_faqs&snav=2&faqId=310* (last visited December 14, 2017) ("Wireless internet access (Wi-Fi) . . . is available onboard all ships fleetwide. Prices for internet access vary and are subject to change. Log on to the to the network 'royal-wifi' using your device, open your browser and follow instructions to log on.").

3

Report for the ECPA begins with a realization that was made in 1984 that the Wiretap Act did not cover "computer-to-computer communications." *See* S. REP. 99-541, 8, 1986 U.S.C.C.A.N. 3555, 3562. "After the proliferation of electronic communications in the 1980s, legislators became concerned about the adequacy of existing Fourth Amendment and statutory protections and set out to enact new legislation regulating government and private interception of these new media." *Priority Payment Sys., LLC v. Intrend Software Sols.*, No. 1:15-CV-04140-AT, 2016 WL 8809877, at *5 (N.D. Ga. Nov. 28, 2016) (citations omitted). Thus, Title II of the ECPA, the SCA, both authorizes the government to compel by court order the production of certain stored customer or subscriber records but also establishes certain regulations on its ability to do so. *See* 18 U.S.C. §§ 2703, 2705.

As one commentator explained, by regulating access to electronic communications stored by two kinds of service providers, "electronic communication services" ("ECS") and "remote computing services" ("RCS"), the SCA provided greater privacy protections for users than otherwise existed:

> The SCA . . . offer[s] network account holders a range of statutory privacy rights against access to stored account information held by network service providers. The statute creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information. It does this in two ways. First, the statute creates limits on the government's ability to compel providers to disclose information in their possession about their customers and subscribers. Although the Fourth Amendment may require no more than a subpoena to obtain e-mails, the statute confers greater privacy protection. Second, the statute places limits on the ability of ISPs to voluntarily disclose information about their customers and subscribers to the government. Although the private search doctrine of the Fourth Amendment allows private providers to make such disclosures, the SCA imposes limitations on the circumstances in which such a disclosure can occur.

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It ("User's Guide")*, 72 Geo. Wash. L. Rev. 1208, 1212-13 (2004) (footnotes omitted).

B. **Coverage of the SCA for Section 2703(d) Orders – ECS and RCS**

For the type of order at issue here – an order pursuant to Section 2703(d) – a "government entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service," 18 U.S.C. § 2703(c)(1), but "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Thus, the protection for subscribers of the service apply only where the service in question involves "a provider of electronic communication service or remote computing service."

This Court summarized what defines such ECS and RCS for purposes of the statute:

> The SCA provides protections for electronic communications stored by two kinds of service providers: "electronic communication services" ("ECS") and "remote computing services" ("RCS"). The statute defines ECS as "any service which provides to users thereof the ability to send or receive wire or electronic communications," 18 U.S.C. § 2510(15), a category of provider generally understood to refer to "telephone companies and electronic mail companies," Orin S. Kerr, ["*User's Guide*"], 72 Geo. Wash. L. Rev. 1208, 1243 n.38 (2004) (citing S. Rep. No. 99–541, at 14 (1986), reprinted in 1986 U.S.C.C.A.N. at 3568). RCS, by contrast, is defined as "the provision in the public of computer storage or processing services by means of an electronic communications system," *id*. § 2711(2), with the term "electronic communications system" further defined to mean "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications," *id*. § 2510(14) (emphasis supplied). The term "electronic storage" means "any temporary, intermediate storage of a wire or electronic communication incident to the electronic transmission thereof," *id*. § 2510(17)(A), including any storage "for purposes of backup protection of such communication," *id*. § 2510(17)(B). With technological advances since enactment of ECPA and the SCA, the difference between ECS and RCS has eroded because "most network service providers are multifunctional" and "[t]hey can act as providers of ECS in some contexts, providers of RCS in some contexts, and as neither in some contexts as well." Kerr, *User's Guide*, 72 Geo. Wash. L. Rev. at 1215; *see also In re Application of the United States of America for a Search Warrant for Contents of Electronic Mail and*

> *for an Order Directing a Provider of Electronic Communication Services to not Disclose the Existence of the Search Warrant* ("*In re United States*"), 665 F. Supp. 2d 1210, 1214 (D. Or. 2009) ("Today, most ISPs provide both ECS and RCS; thus, the distinction serves to define the service that is being provided at a particular time (or as to a particular piece of electronic communication at a particular time), rather than to define the service provider itself.").

*In re Search of Info. Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc.*, No. 16-MJ-00757 (BAH), 2017 WL 3445634, at *6 (D.D.C. July 31, 2017). To emphasize, the SCA in this context applies to "a provider of electronic communication service or remote computing service," § 2703(c)(1), which includes "*any* service which provides to users thereof the ability to send or receive wire or electronic communications," 18 U.S.C. § 2510(15) (emphasis added).

The legislative intent of the SCA is clear that ISPs and telecommunications companies that carry internet traffic qualify as ECS. *See* S. REP. 99-541, 14 ("Existing telephone companies and electronic mail companies are providers of electronic communication services."). Most courts state that such services are axiomatic to the definition of ECS. *See Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004) (concluding that America Online is an ECS provider); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) (stating that ISPs such as America Online, Juno, and UUNET, as well as telecommunications companies whose cables and phone lines carry traffic are within the definition of ECS); *Matter of Application of United States of America*, 45 F. Supp. 3d 1 (D.D.C. 2014) (accepting that Yahoo is an ECS); *see also Warshak v. United States*, 532 F.3d 521 (6th Cir. 2008) (holding that the statutory definition of an ECS provider includes "basic e-mail services"); *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) (holding that Netgate, a provider of e-mail services, is "undisputedly" an ECS); *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) (holding that phone companies and internet service providers both qualify as an ECS); *United States v. Weaver*, 636 F.Supp.2d 769 (C.D. Ill.

2009) (concluding that Microsoft, which provides email services through Hotmail, is an ECS).

### C. RCCL is an ECS and/or RCS for Purposes of the SCA Process Here

As noted above, the requested Section 2703(d) order seeks subscriber and transactional records related to internet services provided by RCCL aboard an RCCL-owned cruise ship. RCCL provides its passengers with the ability to access the internet – and thus, by definition, to send and receive electronic communications (including web-based email) – while aboard the ship. As RCCL's website makes clear, before customers buy RCCL's service by paying the extra fee to use on-board Wi-Fi, they cannot access the internet; after they pay that fee, they can. RCCL is thus clearly selling, in that transaction, "the ability to send or receive wire or electronic communications," 18 U.S.C. 2510(15), and therefore is selling electronic communications service.

By providing such internet access to its customers (that is, serving as an ISP), for legal process seeking information about those services, RCCL is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). As noted above, internet access (like email) is generally accepted as a form of electronic communications. *See also, e.g., Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 876 (9th Cir. 2002) (ability to access website constitutes an "electronic communication" as defined under § 2510); *id.* at 876 (explaining that "website owners . . . transmit electronic documents to servers, where the documents are stored. If a user wishes to view the website, the user requests that the server transmit a copy of the document to the user's computer. When the server sends the document to the user's computer for viewing, a transfer of information from the website owner to the user has occurred. Although the website owner's document does not go directly or immediately to the user, once a user accesses a website, information is transferred from the website owner to the user via one of the specified mediums.").

Critically, a company can be a "provider of electronic communication service" regardless of the company's primary business or function. *See, e.g., Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114-15 (3d Cir. 2004) (insurance company that provided email service to its employees is an ECS); *United States v. Mullins*, 992 F.2d 1472, 1478 (9th Cir. 1993) (airline that provided travel agents with computerized travel reservation system accessed through separate computer terminals could be a provider of ECS); *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 793 F. Supp. 2d 311, 334 (D.D.C. 2011) (non-profit advocacy organization could be an ECS because "the language chosen by Congress captures any service that stands as a 'conduit' for the transmission of wire or electronic communications from one user to another" and not just "commercial internet service provider[s]") (*citing Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 902 (9th Cir. 2008), *rev'd on other grounds and remanded sub nom. City of Ontario, Cal. v. Quon,* 560 U.S. 746 (2010).

In *Fraser*, Nationwide Mutual Insurance, fired an employee, Fraser, based in part on emails the company found in its email system. *Fraser*, 352 F.3d at 110. Fraser sued Nationwide for, among other things, violating his privacy rights under the Stored Communications Act. *Id.* The Court found for Nationwide, and Fraser appealed the decision to the Third Circuit. The Third Circuit found that, "because Fraser's e-mail was stored on Nationwide's system (which Nationwide administered)," Nationwide was an ECS. *Id.* at 114-15. Notably, the Court reached this holding about Nationwide's status as an ECS even though Nationwide's primary business was insurance, not providing electronic communications services. Just as Nationwide provided its employees with email hosted on its own server, onboard its ships, RCCL hosted internet access for its customers through its own infrastructure, including RCCL-owned and -maintained networks, computers, routers, and other devices. *Id.* at 110.

Moreover, although not addressed explicitly in *Fraser*, there is little doubt that the insurance company would also have purchased internet access and bandwidth from another provider of electronic communication service. Such a purchase from an upstream provider does not preclude an entity that provides its customers with the ability to send or receive communications from itself being an ECS. RCCL thus provides to its passengers and staff the ability to send or receive electronic communications, and it is an ECS from whom information can be obtained pursuant to section 2703(d). This is true even though other entities, such as HCCL, may have played a role in the transmission of the communications by providing the internet connection along which the communications were ultimately routed.

This broad extent of coverage makes sense. Particularly given the statute's use of the phrase "any service," the question under the SCA is *not* whether the company as a whole, or in some general sense, is primarily "a provider of electronic communication service"; rather, the question under the SCA is whether – related to the legal request at issue – the service has features that satisfy the broad definitions of the types of providers covered by the SCA, such as giving subscribers/customers the ability to send and receive internet communications with websites through a paid internet access account. This is in keeping with the understanding that, under the SCA, the court must "define the service that is being provided at a particular time (or as to a particular piece of electronic communication at a particular time), rather than to define the service provider itself." *In re United States*, 665 F. Supp. 2d at 1214.

In denying the requested order, the Magistrate Judge read the United States's brief as making a "broader proposition" that "any business which provides web access as a convenience becomes" an ECS or RCS and thus that "every entity which now offers free WiFi would be rendered a 'provider' for Section 2703 purposes." Opinion at 2-3. Preliminarily, this case does

not involve a provider of free WiFi, as the government understands it; rather, as noted on RCCL's website, it provides internet access for a fee.[4]

The Magistrate Judge's decision seems animated by a concern that entities whose primary function did not involve the provision of electronic communications services (every entity "which provides web access as a convenience") would be an ECS or RCS for purposes of the statute. However, if the principle at issue is whether the company's *primary* business purpose was the provision of the electronic communication service or remote computing service, this concern finds no basis in the statute.

That is, there is no indication that Congress intended for the SCA to cover ISPs (or any other businesses) – but only if that was their only or their primary type of business. Such a legal principle would have significant unintended results. Consider, for example, a business such as Amazon that is primarily engaged in retail sales over the internet but also performs web hosting services. Contrary to current practice, the Magistrate Judge's decision would mean that, because Amazon's predominant businesses made the entity not an ECS/RCS writ large, its web hosting clients would find that their remotely stored data and stored communications would not be protected under the SCA and thus could be produced without the limitations set therein – *e.g.*, voluntarily by the provider or with only a grand jury subpoena. Not only would this result be contrary to the expectations of any subscribers familiar with the SCA, it would lack any foundation in the statute, as there is no suggestion that Congress intended the scope of the SCA's coverage to depend upon the type of business offering the electronic communications or remote computing.

---

[4] The requested Section 2703(d) order presumes that RCCL charges subscribers/customers of its internet access service and requires them to login or otherwise identify themselves, as the requested order seeks (among other things) subscriber names, addresses, identifying information and means of payments, information which RCCL would presumably only collect if its customers/subscribers were being charged for the service.

Moreover, the United States does not here contend that any use of the internet by a company renders all its records subject to the SCA. Rather, here, the scope of the records sought involves a service covered by the SCA. The service at issue is not incidental to the records sought – the records are related to an electronic communications service (internet access). Thus, the 2703(d) order sought is distinguishable from the many cases where courts have found that commercial websites are not an ECS unless the service at issue involves allowing users to communicate directly with each other, as opposed to only allowing communication between the user and retailer. *See Priority Payment Sys.*, 2016 WL 8809877, at *6 ("courts have distinguished those entities that sell access to the internet from those that sell goods or services on the internet or otherwise make use of internet services to conduct their day to day business activities").[5]

Nor does this case involve the use of the internet (or other electronic communications) by a company's own employees on company-provided devices for their job duties. That is, to determine whether RCCL's internet access subscriber/customer records are covered by the SCA,

---

[5] *See Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1271–72 (W.D. Wash. 2011), on reconsideration, No. C09-1485RSL, 2011 WL 2790471 (W.D. Wash. May 17, 2011) (holding that an online information service that sells background checks is not an ECS even though it uses electronic communications to conduct its business on the internet); *Kaufman v. Nest Seekers, LLC*, 2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006) ("An on-line business which provides its customers, as part of its commercial offerings, the means by which the customers may engage in private electronic communications with third-parties may constitute a facility through which electronic communication service is provided"); *In re Jetblue Airways Corp. Privacy Litigation*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005) (holding that an airline passenger reservations systems website is not an ECS simply because it facilitates communication between the website and the user); *In re Northwest Airlines Privacy Litigation*, No. CIV.04-126(PAM/JSM), 2004 WL 1278459, at *2 (D. Minn. June 6, 2004) (holding that "[d]efining electronic communications service to include online merchants or service providers like [an airline's commercial website] stretches the ECPA too far."); *Dyer v. Northwest Airlines Corps.*, 334 F. Supp. 2d 1196, 1198 (D.N.D. 2004) (holding that an airline website is not an ECS because it sells its products and services on the internet and does not provide access to the internet itself); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) (holding that an online merchant is not an ECS simply because it receives electronic communications from customers); *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041 (N.D. Ill. 1998) (holding that a company hired to perform a systems integration project is not an ECS simply because it uses an internet service provider to access internal email communications).

the Court need not address whether, "[s]imply because [a company] provides telephone, internet, and email services to its employees in order to perform their job duties does not make [the company] an electronic communication service provider as defined by the SCA." *Priority Payment Sys.*, 2016 WL 8809877, at *6. Put another way, the government does not here dispute the principle that a mere user of ECS provided by another is not a provider of ECS.

In sum, the legal principle here is simply that, where a company provides internet access to subscribers/customers for a fee, and the government seeks an order under Section 2703(d) for records related to that service, the company is an ECS and/or RCS for purposes of the SCA. Thus, the government is authorized to obtain the records under the SCA, and the all the SCA subscriber protections likewise apply. To hold otherwise would leave the government and the public in a situation where certain electronic communications/use of an ISP would not be covered, simply because the primary business of the ECS and/or RCS was not its role as an ISP.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the Court find that RCCL is, for purposes of the requested order under Section 2703(d), a provider of electronic communications service and/or remote computing service, further find that the United States has met all other requirements of Section 2703(d), and issue the requested order.

Respectfully submitted,

JESSE K. LIU
UNITED STATES ATTORNEY
D.C. Bar Number 472845

By: _/s/ Jonathan P. Hooks_
Youli Lee
Jonathan P. Hooks
Assistant United States Attorneys
NY Bar #4064028 (Lee)
DC Bar #468570 (Hooks)
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7705 (Lee)
Telephone: 202-252-7796 (Hooks)
Email: youli.lee@usdoj.gov
Email: jonathan.hooks@usdoj.gov

DATE: December 14, 2017